IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

```
                                    *
MARIA GONZALEZ,
                                    *
        Plaintiff,                  *
v.                                            Case No.: PWG-17-159
                                    *
PRINCE GEORGE'S COUNTY, MD,
                                    *
        Defendant.
                                    *
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Maria Gonzalez worked for Defendant Prince George's County, Maryland (the "County") as an Administrative Aide II from October 1, 2007 until at least September 20, 2016.[1] Compl. ¶¶ 4, 8, ECF No. 2. Throughout her employment, her workday was 8.5 hours long but the County paid her for only 8 hours of work each day, because it designated half an hour each day as a "lunch break." *Id.* ¶ 20. Yet, according to Gonzalez, she "was not permitted to take a lunch break each and every day." *Id.* ¶ 21. Rather, she worked at least two lunch breaks per week from May 29, 2014 through March 9, 2016, and she worked three lunch breaks per week beginning July 5, 2016. *Id.* ¶¶ 22, 24. She claims that, as a result, she worked in excess of forty hours per week but the County failed to pay her overtime wages (or even minimum wage) for the additional hours she worked, *id.* ¶¶ 20–26, and thereby violated the Federal Fair Labor Standards

---

[1] Gonzalez alleges in her Complaint, which is verified, Compl. 7, that she still worked for the County at the time she filed suit, *id.* ¶ 5, although she often refers to her employment in the past tense, *see, e.g., id.* ¶¶ 8, 12, 19–23. The County provides evidence that Gonzalez resigned on September 20, 2016. Anstead Aff. ¶ 8, ECF No. 19-1. This disputed fact is not material to the issue currently before the Court. I refer to Gonzalez's employment in the past tense for convenience, without resolving the factual dispute.

Act ("FLSA"), 29 U.S.C. §§ 201 – 219; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann, Lab. & Empl. §§ 3-501 – 3-509; and the Maryland Wage and Hour Law ("MWHL"), Lab. & Empl. §§ 3-401 – 3-431.  Compl. 1.

Pending is the County's Motion to Dismiss or in the Alternative, Motion for Summary Judgment.  Def.'s Mot., ECF No. 19.[2]  The County insists that the Collective Bargaining Agreement ("Agreement" or "CBA") that it entered into with the American Federation of State, County, and Municipality Employees, Local Number 3389 (the "Union"), of which Plaintiff was a member, governs the disputes raised in this litigation, and therefore Gonzalez's failure to exhaust contractual remedies pursuant to the grievance and arbitration procedures described in the CBA bars this suit.  *Id.* at 2.  Gonzalez agrees that her "position and job are consistent with being governed by the CBA," that "[t]he Copy of the CBA that is attached to the Motion is authentic," and that she signed the Acknowledgement Form, acknowledging receipt of the CBA. Pl.'s Opp'n 3.  But, she contends that the grievance and arbitration provision does not apply to her claims in this Court because, *inter alia*, she challenges compliance with federal and state statutes, not the CBA.  *Id.* at 4.  Because I find that, on the record before me and drawing all reasonable inferences in favor of Gonzalez, the Agreement does not cover statutory claims such as those Gonzalez brings, I will deny the County's Motion, treated as one for summary judgment, and order the County to respond to Gonzalez's Complaint.

### Standard of Review

The County moves to dismiss or for summary judgment.  Def.'s Mot. 1–2.  On a motion to dismiss, the Court only may consider attached documents that are "integral to and explicitly

---

[2] The parties fully briefed this Motion.  *See* ECF Nos. 19, 20, 23, 27.  A hearing is not necessary. *See* Loc. R. 105.6.

relied on in the complaint," and only when "the plaintiffs do not challenge [their] authenticity. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).   While Gonzalez concedes the authenticity of the Agreement that the County attached to its Motion, she clearly does not rely on it in her Complaint and it is not integral to the Complaint, given that Gonzalez does not believe that the issues she raises fall within its ambit.   Therefore, I will treat the County's Motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (parties have sufficient notice that court may treat motion as one for summary judgment where, as here, defendant titles its motion in the alternative as one for summary judgment and attaches materials that are not integral to complaint); *Ridgell v. Astrue*, DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012) (same).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).   If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.   *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).   The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).   Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*   The Court considers the undisputed facts,

and to the extent there is a genuine dispute of material fact, "this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

### The Collective Bargaining Agreement

The Collective Bargaining Agreement provides, with exceptions not relevant here, that "employees shall have a regular workweek of (8) consecutive hours, excluding an unpaid meal period, within a twenty-four hour (24) hour period, and the normal workweek shall consist of five (5) consecutive days, Monday through Friday." CBA art. 13(A), at 9. Article 15, "Premium Pay," provides that "[e]mployees will be compensated at the rate of one and one-half (1.5) times their regular rate of pay for time they are required to work in excess of forty (40) hours in a workweek." CBA art. 15(A)(1), at 11.

The Agreement also provides that "[a] complaint or dispute between . . . the County and an employee, including a complaint or dispute involving the application, meaning or interpretation of the provisions of this Agreement shall be considered a grievance and subject to resolution under the . . . procedures" set forth in Article 45 of the CBA. CBA art. 45, at 38, ECF No. 19-3. First, at Step 1 of the grievance procedures, the employee, through a Union representative, gives written notice of the grievance to the employee's department within ten days of its occurrence; the representative then meets with the employee's supervisor to "endeavor to adjust the matter"; and the department responds to the grievance after that meeting. *Id.* If the matter is not resolved, at Step 2, a Union representative meets with the employee's department head to "attempt[] to resolve the grievance." *Id.* at 39. Next, at Step 3, if the matter remains unresolved, the employee files a written appeal, after which, at Step 4, the matter is

4

submitted to arbitration if it still is not resolved. *Id.* The Agreement states that "[o]nly grievances arising as a result of disputes concerning the meaning, interpretation or application of this Agreement shall be subject to Step 4 (Arbitration)." *Id.*

## Discussion

It is undisputed that the CBA governs Gonzalez's "position and job," that it includes grievance and arbitration procedures, and that Gonzalez acknowledged receipt of a copy of it. Def.'s Mot. 2; Pl.'s Opp'n 3.

> In general, union members with a grievance under the CBA "must attempt to use the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). Thus, if an employee "resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted." *Vaca v. Sipes*, 386 U.S. 171, 184 (1967).

*Windsor v. Bd. of Educ. of Prince George's Cty.*, No. TDC-14-2287, 2016 WL 4939294, at *14 (D. Md. Sept. 13, 2016). On this basis, the County moves to dismiss. Def.'s Mot. 2. In Gonzalez's view, she did not have to arbitrate the statutory claims she raises in this lawsuit because they are outside the scope of arbitration, which is limited to "disputes concerning the meaning, interpretation or application of th[e] Agreement." Pl.'s Opp'n 4. According to the County, "[t]he Fourth Circuit has held that FLSA claims can be resolved in mandatory arbitration proceedings." Def.'s Mot. 6 (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002)).

The pivotal issue here, however, is whether Gonzalez *had to* follow the grievance process for her statutory claims. The answer is no. While an employee may agree by contract to follow grievance procedures, including arbitration, for statutory claims instead of pursuing them in court, an employee is not required to do so unless the waiver of litigation is "clear and

unmistakable" in the agreement between the party or his or her union and the employer. *Wright v. Universal Maritime Service Corp.,* 525 U.S. 70, 79 (1998); *see also Carson v. Giant Food, Inc.,* 175 F.3d 325, 331–32 (4th Cir. 1999); *Birch v. The Pepsi Bottling Grp., Inc.*, 207 F. Supp. 2d 376, 380–81 (D. Md. 2002). Under the *Wright* standard, a collective bargaining agreement binds an employee to arbitrate a federal statutory claim if it includes "an explicit arbitration clause . . . under which the employees agree to submit to arbitration all federal causes of action arising out of their employment." *Birch*, 207 F. Supp. 2d at 381 (quoting *Carson,* 175 F.3d at 331–32). But, when it simply refers "to 'all disputes' or 'all disputes concerning the interpretation of the agreement,'" it does "not meet the clear and unmistakable requirement of *Wright*" unless there is "an explicit incorporation of statutory . . . requirements elsewhere in the contract." *Id.* (quoting *Carson*, 175 F.3d at 332).

In *Wright*, the Supreme Court concluded that the provisions of the agreement at issue, which stated that it was "'intended to cover all matters affecting wages, hours, and other terms and conditions of employment,'" that "'anything not contained in th[e] Agreement [would] not be construed as being part of th[e] Agreement,'" and that it was "'the intention and purpose of all parties [to the agreement] that no provision or part of th[e] Agreement [would] be violative of any Federal or State Law,'" did not "satisf[y] the 'clear and unmistakable' standard." *Birch*, 207 F. Supp. 2d at 381 (quoting *Wright*, 525 U.S. at 81). On that basis, the *Wright* Court "held that 'the collective-bargaining agreement did not contain a clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination.'" *Id.* (quoting *Wright*, 525 U.S. at 82).

In *Birch*, an employee brought a claim against her employer under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) and (b) ("ADA"), and the employer moved to dismiss or

for summary judgment, based on the arbitration provision of the collective bargaining agreement between Birch's union and her employer.    *Birch*, 207 F. Supp. 2d at 277, 380–81.   In the agreement at issue, the grievance provision provided that "the Union, the employees and the Company agree that the provisions of this Article and Article XIII shall provide the means of settlement of all grievances of employees," and the arbitration provision provided that "[a]ny grievance concerning the interpretation, application or alleged breach of any provision of this Agreement, that has been properly processed through the grievance procedure as set forth in Article XII and has not been settled at the conclusion thereof, may be appealed to arbitration . . . ."   *Id.* at 382 (citations to record omitted).   The Court concluded that the arbitration provision was "general and broad" and "'insufficiently explicit to pass muster under' *Wright*," such that it did not require arbitration of the ADA claim.   *Id.* at 383 (quoting *Brown v. ABF Freight Sys.*, 183 F.3d 319, 321 (4th Cir. 1999)).   The agreement also provided:

> No employee will be discriminated against with respect to hire, tenure or employment, opportunity for advancement, wages, hours of work, or any other term or condition of employment because of sex, race, color, creed or national origin. The Company shall not participate in any act of discrimination prohibited by law. . . . Both parties acknowledge their respective obligations under Title VII of the Civil Rights Act and agree that neither will discriminate against any employee or applicant for employment because of race, color, religion, sex, age, veteran status, disability or national origin.

*Birch*, 207 F. Supp. 2d at 381–82 (citations to record omitted).   The Court further concluded that, despite this language that "may parallel federal law," these provisions "constitute merely an 'agreement not to commit discriminatory acts,' rather than an 'agreement to incorporate, in toto, the anti-discrimination statutes that prohibit those acts,'" and they do not "identify the ADA in any way." *Id.* (quoting *Brown*, 183 F.3d at 322).   Consequently, even considering these provisions, the agreement did not bar the employee from litigating her ADA claim.   *Id.*

*Carson*, like *Birch*, involved discrimination claims pursuant to federal statutes, holding that "[i]f another provision, like a nondiscrimination clause, makes it unmistakably clear that the discrimination statutes at issue are part of the agreement, employees will be bound to arbitrate their federal [discrimination] claims." *Carson,* 175 F.3d at 332.  In *Carson*, the agreement at issue did not require arbitration of the federal statutory discrimination claims because it "state[d] broadly that the parties agree to arbitrate all disputes over the meaning of the agreement" without "mention[ing] . . . disputes arising under federal law," thereby failing to "satisfy the demand of particular clarity," and while the agreement "contain[ed] antidiscrimination provisions stating that the company and the union agree[d] not to discriminate on the basis of race or age," they did not "begin to incorporate by reference federal statutory law." *Id.*

While the case law from this Court and the Fourth Circuit does not discuss FLSA claims in particular, *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1131 (7th Cir. 2017), is on point and persuasive.  There, an employee filed suit, claiming FLSA and Illinois wage payment law violations based on his employer's failure to pay him for his last two weeks of work. *Id.*  The employer moved to dismiss, arguing, as the County does here, that the employee failed to exhaust his contractual remedies under the grievance procedure described in the collective bargaining agreement. *Id.* at 1131–32.  The district court entered summary judgment in the employer's favor, and the Seventh Circuit reversed "[b]ecause the collective bargaining agreement did not clearly and unmistakably waive Vega's right to pursue his FLSA claim in a judicial forum." *Id.* at 1132.

The agreement at issue in *Vega*, like the CBA in this case, "set[] forth a mandatory four-step procedure culminating in arbitration to resolve employee grievances"; it "define[d] 'grievance' to include 'a claim or dispute concerning pay, hours[,] or working conditions or the

interpretation or application of th[e] Agreement.'"   *Id.* at 1131–32.   The Seventh Circuit

observed that, based on those provisions,

> [i]f Vega's claim were one relying on his substantive rights under the collective
> bargaining agreement, there is no question that he would have to exhaust his
> contractual remedies by pursuing a grievance or, in the alternative, demonstrate
> why futility or one of the other recognized exceptions to exhaustion should relieve
> him of that obligation.

*Id.* at 1133.  But Vega, like Gonzalez, chose to raise his statutory rights instead of his contractual

rights, and the appellate court concluded that "the district court did not appreciate the distinction

between those categories of rights vis-à-vis his obligation to resort to the grievance procedure."

*Id.*  It noted that, while Vega could have agreed to arbitrate his FLSA claim, the agreement at

issue did not "clearly and unmistakable require[] Vega to use the grievance and arbitration

procedure to resolve his FLSA claim rather than skipping over that process and proceeding

directly to court."   *Id.* at 1134.  It concluded that "there was no need for Vega to exhaust his

contractual remedies," reasoning:

> [N]othing in the language of the collective bargaining agreement clearly and
> unmistakably requires an employee to resolve a statutory claim through the
> grievance procedure. Although section 8.1 of the agreement defines a grievance to
> include a claim or dispute "concerning pay, hours[,] or working conditions or the
> interpretation or application of this Agreement," this could be thought to mean a
> claim over the requirements of the contract itself rather than one about what the
> FLSA requires. *See Wright*, 525 U.S. at 80–81, 119 S.Ct. at 396–97. Indeed, that
> is the most natural reading of the agreement, given that nowhere in Article VIII
> or, for that matter, anywhere else in the agreement is there even a reference to the
> FLSA.[] Under no sense of the phrase "clear and unmistakable" can the agreement
> be read to compel an employee to resolve his rights under FLSA through the
> grievance process.

*Id.* at 1135.

Here, although the CBA describes a "regular workweek" and provides for overtime pay,

CBA arts. 13(A), at 9, 15(A)(1), at 11, Gonzalez brings FLSA and state statutory claims for

overtime and minimum wages; she does not assert any claims under the CBA.  And, the CBA

contains only a general grievance and arbitration provision that "[a] complaint or dispute between . . . the County and an employee, including a complaint or dispute involving the application, meaning or interpretation of the provisions of this Agreement shall be considered a grievance and subject to resolution under the . . . procedures" set forth in Article 45 of the CBA. *Id.* art. 45, at 38.  It does not provide for FLSA or state wage payment claims to be governed by its grievance process or explicitly incorporate the FLSA, MWPCL, or MWHL requirements.[3] Thus, there is neither "an explicit arbitration clause . . . under which the employees agree to submit to arbitration all federal causes of action arising out of their employment," nor "an explicit incorporation of statutory . . . requirements elsewhere in the contract." *Birch*, 207 F. Supp. 2d at 381 (quoting *Carson,* 175 F.3d at 331–32).  Therefore, it does "not meet the clear and unmistakable requirement of *Wright*." *Id.*; *see also Wright*, 525 U.S. at 79–82; *Carson*, 175 F.3d at 332.  Consequently, Gonzalez may pursue her FLSA and state law claims in federal court without first exhausting her contractual remedies pursuant to the grievance and arbitration procedures described in the CBA.  *See Wright*, 525 U.S. at 79–82; *Vega*, 856 F.3d at 1132–35; *Carson*, 175 F.3d at 332; *Birch*, 207 F. Supp. 2d at 381; *see also Bell v. Se. Pennsylvania Transp. Auth.*, 733 F.3d 490, 496 (3d Cir. 2013) ("[W]here the [plaintiffs] rely solely on their statutory,

---

[3] The County notes that the Fourth Circuit has stated that, "where the arbitration clause is 'not so clear,' employees might yet be bound to arbitrate their federal claims if 'another provision, like a nondiscrimination clause, makes it unmistakably clear that the discrimination statutes at issue are part of the agreement.'"  Def.'s Reply 4 (quoting *Brown*, 183 F.3d at 321).  It then argues that "the CBA contains a clear and unmistakable 'nondiscrimination clause' in Article 4, Section A which specifies that Maryland and Federal anti-discrimination laws are proper subjects for arbitration."  *Id.* at 4–5.  Insofar as the County suggests that Gonzalez's FLSA and state wage law claims are subject to the grievance process because the CBA contains an antidiscrimination clause, it grossly misreads *Brown*, which only provides that employees may be bound to "arbitrate *discrimination* claims arising under the ADA-or any other federal statutory antidiscrimination law" when the bargaining agreement has an antidiscrimination clause that "makes it unmistakably clear that the discrimination statutes at issue are part of the agreement." *See Brown*, 183 F.3d at 321 (emphasis added).  The County's interpretation of *Brown* is simply inconsistent with the clear holding of the opinion.

rather than their contractual, rights to recovery [under a collective bargaining agreement with grievance and arbitration provisions], . . . such plaintiffs may proceed on their FLSA claims without first seeking arbitration."); *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 53 (1st Cir. 2013) (concluding that "nothing in the CBAs [could] even be remotely construed to require the plaintiffs to seek redress for their FLSA claims through the CBA's grievance processes" where the arbitration provisions did "not mention the employees' statutory claims, much less clearly or unmistakably agree to subject them to arbitration" and "the defendants [could] not point to a single provision of the relevant CBAs that work[ed] a clear and unmistakable waiver of their FLSA claims"); *Collins v. Lobdell*, 188 F.3d 1124, 1127 (9th Cir. 1999) (noting that "exhaustion of remedies provided for in a collective bargaining agreement is not required even where a claim based on statutory rights also presents a claim under the agreement" and concluding that, "[b]ecause Appellants' complaint [was] based on a violation of statutory rights provided by the FLSA, they were not required to exhaust CBA remedies prior to bringing their claim"); *Alfaro v. City of San Diego*, No. 17-46-H-KSC, 2017 WL 2537242, at *4 (S.D. Cal. June 12, 2017) ("[E]ven if Plaintiffs' claims did present a claim arising under the MOU, Plaintiffs would still be entitled to take their case straight to federal court as long as their claims also arose under the FLSA."); *Philadelphia Metal Trades Council v. Konnerud Consulting W., A.S.*, No. 15-5621, 2016 WL 1086709, at *4 (E.D. Pa. Mar. 21, 2016) ("[B]ecause Plaintiff's claims depend solely on statutory rights and not on an interpretation of the CBA, Plaintiff may proceed with its claims without first seeking arbitration.").

## **ORDER**

Accordingly, it is, this <u>5th</u> day of <u>July</u>, <u>2017</u>, hereby ORDERED that

1.  Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment, ECF

    No. 19, treated as a motion for summary judgment, IS DENIED; and

2.  By <u>July 26, 2017</u>, Defendant SHALL FILE an Answer to Plaintiff's Complaint.


_____/S/_____
Paul W. Grimm
United States District Judge

lyb